## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

Bky No.:  21-42321

In re:

Tara Lynn Siegle,

      Debtor.

**DEBTOR'S SUPPLEMENTAL
BRIEFING IN SUPPORT OF
APPLICATION TO APPROVE POST-
PETITION FEE AGREEMENT**

Pursuant to the Court's January 28, 2022, Order for Supplemental Briefing [ECF No. 20.], Debtor submits this supplemental memorandum of law in support of her Application to Approve Post-Petition Fee Agreement [ECF No. 10.]

## <u>INTRODUCTION AND BACKGROUND</u>

Debtors, faced with mounting pressure from creditors, turn to bankruptcy attorneys for assistance with competent legal representation that will help them find a way out of their financial troubles. However, due to the current state of the law, paying for those legal services can be a barrier to debtors seeking access to the judicial system that is intended to protect them. Typically, debtors simply do not have the means to pay in full for the fees necessary to retain bankruptcy counsel. As a result, some debtors are prevented from filing bankruptcy, leaving them at the mercy of their creditors. It was in this context that bankruptcy attorneys began to develop bifurcated fee agreements to ensure that even the least well-off debtors are able to retain counsel and gain the relief they need from the bankruptcy system designed to protect them and their assets from creditors.

The financial barriers to obtaining bankruptcy counsel have been recognized by the courts that have analyzed and considered the issue of bifurcated fee agreements. In *In re Hazlett*, the court explained that there are "challenges to debtors, debtors' counsel, and the Chapter 7 system when individuals in need of bankruptcy relief do not have the ability to pay a pre-petition retainer to hire an attorney." *In re Hazlett*, No. BR 16-30360, 2019 WL 1567751, at *5 (Bankr. D. Utah Apr. 10, 2019). The court reasoned that Debtors who cannot afford an attorney are faced with undesirable choices. These choices include: filing *pro se*, hiring a bankruptcy petition preparer rather than legal counsel, being improperly placed in a Chapter 13 solely to be able pay attorneys' fees despite being their case being better suited for filing a Chapter 7, improperly paying for legal services with post-dated checks, or paying with a credit card, cashing out a retirement fund, or taking out additional loans. *Id.* Perhaps most concerning, some debtors may simply give up, resulting in them being denied access to a judicial process that is specifically designed to help them obtain a fresh start.

Many of these issues arise from Congress' failure to provide express statutory authority or a defined procedure for the compensation of attorneys to Chapter 7 debtors. Given this void, attorneys and their clients have devised a process for the bifurcation of fees that attempts to balance the client's interest in access to the system as well as the principles underlying the Local Rules, all while complying with the Rules of Professional Conduct. In *Brown*, the bankruptcy court observed:

> The phrase bifurcation of fees in bankruptcy refers to the practice of separating services provided to a client into services provided prepetition and postpetition. Some services are provided prepetition for one fee (whether a

flat fee or based on an hourly charge), which is paid before the bankruptcy petition is filed, and then any additional services that are provided postpetition are charged for, and paid for, postpetition.

*In re Brown*, 631 B.R. 77, 91 (Bankr. S.D. Fla. 2021).

The issue of the validity of bifurcation agreements has not been decided by the Bankruptcy Court in the District of Minnesota, the Bankruptcy Appellate Panel, or the 8th Circuit Court of Appeals. As such, Solvent analyzed the cases from other jurisdictions that have considered whether the use of bifurcated fee agreements are permissible, the majority of which have permitted the use of such agreements. *See, e.g. In re Hazlett*, No. BR 16-30360, 2019 WL 1567751; *In re Carr*, 613 B.R. 427 (Bankr. E.D. Ky. 2020) (finding that bifurcated fee agreements comply with the Bankruptcy Code, Rules, and Rules of Professional Conduct); *In re Brown*, 631 B.R. 77, 91 (Bankr. S.D. Fla. 2021); *Walton v. Clark & Washington, P.C.*, 469 B.R. 383 (Bankr. M.D. Fla. 2012); *Casamatta v. Castle Law Office of Kan. City, P.C. (In re James)*, No. 17-41965-BTF7, 2018 WL 6728395, at *2 (Bankr. W.D. Mo. Nov. 28, 2018) (acknowledging allowance of bifurcated fee agreements if "the fee arrangement is fully disclosed to the court, and the fees charged for both the pre- and postpetition services are reasonable."); *Bethea v. Robert J. Adams & Assocs.*, 352 F.3d 1125, 1128 (7th Cir. 2003); *In re Baldwin*, No. 20-10009(1)(7), 2021 WL 4592265, at *7, *11, *16 (Bankr. W.D. Ky. October 5, 2021) (denying use of bifurcated fee agreements based on the facts presented); *In re Milner*, 612 B.R. 415, 433–34 (Bankr. W.D. Okla. 2019) (finding the bifurcated fee agreements do not satisfy the standards set forth in *Hazlett*); *In re Slabbinck*, 482 B.R. 576, 584 (Bankr. E.D. Mich. 2012); *In re Abdel-Hak*, No. 12-46329-MBM, 2012 Bankr. LEXIS 5393, 2012 WL

5874317, at *7 (Bankr. E.D. Mich. Nov. 16, 2012); *In re Lawson*, 437 B.R. 609 (Bankr. E.D. Tenn. 2010) (rejecting use of post-dated checks but endorsing bifurcated fee agreements with appropriate procedures). After considering these cases, Solvent drafted a bifurcated fee agreement for use in representing clients in this District that attempts to comply with each of the requirements discussed in the cases cited above.

## THE SOLVENT BIFURCATED FEE AGREEMENT

Based on counsel's comprehensive review of the cases considering bifurcation, counsel identified the provisions that courts have determined to be required for an enforceable and acceptable bifurcated fee arrangement. In addition, Solvent also considered the aspects of bifurcation arrangements that have been deemed impermissible. Based on the caselaw cited above, a valid bifurcation arrangement should include the following requirements:

- The agreement should expressly state the attorney fees for pre-petition and post-petition services;

- The agreement should not include any pre-petition costs in the post-petition fees;

- The agreement's disclosure of compensation should clearly identify that the agreement is a bifurcated fee agreement;

- The attorney must properly disclose and explain the bifurcation process; and

- The agreement cannot attempt to alter the basic services required by the Local Rules.

The case law construing the permissibility of bifurcated fee arrangements has also identified multiple impermissible practices. These include:

- The advancement of filing fees or paying out post-petition payments;

- Factoring mechanisms;

- Inadequate disclosures; and

- Unreasonable fees whereby the attorney charges an increased fee for use of a bifurcated agreement.

The Solvent bifurcated fee arrangement at issue here contains or addresses each of the issues required under previous case law for enforceability while excluding any of the prohibited provisions. As such, the Solvent bifurcated fee arrangement meets or exceeds the requirements imposed by other courts considering bifurcated fees while advancing the public policy goal of ensuring that debtors of limited financial means have access to the judicial process.

## ARGUMENT

The Court's January 28, 2022, Order for Supplemental Briefing [ECF. No. 10] identified nine questions or issues on which it sought supplemental briefing. Each specific issue or question raised by the Court is addressed in turn below.

**A. Does the Bifurcated Fee Arrangement Described in the Application (the "Agreement") Comply with the Requirements for Chapter 7 Debtor Attorneys Set Forth in Local Rule 1007-3-1 and Local Form 1007-3-1?**

Local Rule 1007-3-1 provides:

In any chapter 7 or chapter 13 case in which the debtor is represented by an attorney, the debtor shall file with the petition a Notice of Responsibilities, including a scanned image of the signature page signed by the attorney and the debtor(s). The Notice of Responsibilities shall conform to Local Form 1007-3-1(7) in chapter 7 cases and Local Form 1007-3-1(13) in chapter 13 cases.

Local Rule 1007-3-1 specifically incorporates Local Form 1007-3-1(7), which sets out the responsibilities of a Chapter 7 debtor and their attorney. Under this Local Rule, an

attorney representing a Chapter 7 debtor cannot "unbundle" his or her legal services such that the attorney does not meet his or her obligations under the Rule. *See id.* However, Solvent's bifurcated fee agreement complies with Rule 1007-3-1 because it specifically avoids any unbundling of legal services.

In both the pre-filing and post-filing agreements, Solvent included express language that requires Solvent to represent the debtor to the conclusion of the bankruptcy process unless Solvent obtains permission from the court to withdraw. In addition, Solvent incorporates the Notice of Responsibilities into its pre-filing and post-filing bifurcation agreements in order to ensure the client and the attorney are aware of and are complying with their respective obligations under Rule 1007-3-1. Thus, Solvent's agreement complies with all of the requirements adopted by Local Form 1007-3-1(7) as set forth in the following provisions.

## *Pre-Filing Agreement*

Paragraph 2: Solvent specifically contemplates that the Chapter 7 bankruptcy work may include any of the items listed in the Notice of Responsibilities that is attached to the Agreement. In addition, that same paragraph sets forth the additional scope of engagement rights, responsibilities, and disclosures as incorporated in Exhibit B.

Paragraph 6: Solvent agrees it will remain counsel of record for the debtor until a substitution of attorney is filed or the Court issues an order permitting Solvent to withdraw. Under this provision, Solvent further agrees that it will represent the client in bringing and defending all aspects of the bankruptcy case other than adversary proceedings in which it has not yet made an appearance.

Exhibit A: Solvent specifically incorporates the entirety of Local Form 1007-3-1(7) into its Agreement.

Exhibit B: In Section 2 of Exhibit B, Solvent agrees to remain attorney of record to the extent required by Local Rule 9010-3(g)(4). In Section 8 of Exhibit B, Solvent agrees it will remain attorney of record and recognizes it is obligated to continue representation through the close of the case, the dismissal of the case, or an order permitting Solvent to withdraw.

*Bifurcation Pre-Petition Disclosure*

This disclosure specifically provides (once again) that Solvent will continue its legal services to the debtor in the bankruptcy case to the extent required by Local Rule 9010-(3)(g)(4), meaning until such time as the case is closed, dismissed, or the Court issues an order permitting Solvent's withdrawal.

*Post-Filing Agreement*

Exhibit A to the Post-Filing Agreement incorporates the entirety of Local Form 1007-3-1(7) to ensure the debtor and attorney are aware of their respective responsibilities as set forth in that form.

Thus, the Solvent Agreement makes clear that once retained, Solvent is counsel of record until either the case concludes, or a Court permits Solvent to withdraw. Courts that have analyzed bifurcation agreements have made clear that unbundled services are not permitted and is inconsistent with the purpose and language of the Local Rules of the various Districts.

In *In re Hazlett*, 2019 WL 1567751, the court analyzed the distinction between unbundling and bifurcation in the context of its Local Rule 2091-1. That Rule is broader that Local Rule 1007-3-1 and requires the attorney to represent and advise the debtor "in all aspects of the case, including the § 341 Meeting, motions filed against the debtor, reaffirmation agreements, agreed orders, and other stipulations with creditors or third parties, and post-confirmation matters", as well as in any adversary proceeding.

The Court distinguished unbundled legal services from a bifurcated fee agreement, reasoning that unlike unbundling, the purpose of "the bifurcated fee agreements is decidedly not to abandon the debtor, but to enable the attorney to be paid for the post-petition services." *Id.* at *14-15. Thus, the Court found that the "bifurcated fee agreement is not for unbundling but to facilitate the debtor's post-petition payment for the attorney's post-petition services[]", a result that "increases a debtor's access to legal representation." *Id.* Other District Courts throughout the country have similarly found that bifurcation is permissible so long as the attorney is not limiting the scope of services provided in a manner contradicts the applicable local rules. *See, e.g., In re Brown,* 631 B.R. 77, 100 (Bankr. S.D. Fla. 2021) (distinguishing bifurcation from unbundling and permitting bifurcation with adequate disclosures consistent with the Local Rules); *In re Carr*, 613 B.R. 427, 442 (E.D. Ky. 2020) (analyzing unbundling versus bifurcation and concluding that bifurcation was permissible under Local Rules, Bankruptcy Code, and ethical rules where court approval was required for withdrawal); *Walton v. Clark & Washington*, *P.C.*, 469 B.R. 383 (Bankr. M.D. Fla. 2012) (approving of bifurcation after analyzing difference between bifurcation and unbundling and where agreement requires representation until

Court permission to withdraw is granted). In each of these cases, the respective courts concluded that bifurcation is different from unbundling while upholding the legitimacy of bifurcated fee agreements similar to the one used by Solvent.

Conversely, the one District Court case that rejected bifurcation due to impermissible unbundling did so under considerably different terms. *See In re Prophet*, 628 B.R. 788, 795 (Bankr. D.S.C. 2021). *Prophet* is clearly distinguishable. In *In re Prophet*, the District Court analyzed a bifurcated fee agreement and concluded that it did not comply with SC LBR 9011-1(b). However, the bifurcation agreement in that case contained dramatically fewer disclosures than those included in the Solvent Agreement.

In addition, the District of South Carolina does not have a Local Form similar to Local Form 1007-3-1(7), that clearly lays out all of the required responsibilities of a debtor's counsel in a Chapter 7 case. As such, the disclosures regarding the debtor's counsel were not as robust as in the Solvent Agreement, which specifically incorporates all of the requirements included in Local Form 1007-3-1(7). Given the differences between the Local Rules at issue in *Prophet* and here, along with the heightened disclosures included in the Solvent Agreement, the decision in *Prophet* is distinguishable and should not preclude approval of Solvent's bifurcation procedure.

In sum, under the Solvent Agreement, Solvent is required to represent the debtor until the case is closed, dismissed, or withdrawal is granted by the Court, irrespective of whether it gets fully paid under the post-petition bifurcation agreement. As such, the Solvent Agreement complies with Local Rule 1007-3-1 and Local Form 1007-3-1.

**B.**  **Does the Agreement comply with and adequately disclose Local Rule 9010-3(g) and Applicable Caselaw Regarding Withdrawal of a Debtor's Attorney in a Chapter 7 Case?**

Local Rule 9010-3(g) governs substitution and withdrawal of counsel in bankruptcy proceedings in this District. Local Rule 9010-3(g) provides:

(1)  Substitution. If a party in an adversary proceeding or a debtor in a chapter 7 or 13 case wishes to substitute attorneys, the party or debtor shall file a substitution of attorney signed by the client, the original attorney and the substituted attorney. If a client wishes to substitute attorneys and the client's employment of the attorney was subject to approval by the court, the client shall make an application to substitute attorneys and comply with Local Rule 2014-1.

(2) Withdrawal. An attorney in a bankruptcy case whose employment was subject to approval by the court, an attorney for any party in an adversary proceeding, or an attorney for a debtor in a chapter 7 or 13 case who wishes to withdraw without a substitution of attorney shall make a motion for leave to withdraw.

(3) Service. In an adversary proceeding, substitutions, motions and applications shall be served on all parties to the proceeding and in a case on all entities specified in the applicable subparagraph of Local Rule 9013-3(a).

(4) Effect of Failure to Comply. Until a substitution of attorneys is filed or an order is entered allowing the original attorney to withdraw, the original attorney is the client's attorney of record and the original attorney shall represent the attorney's client in bringing and defending all matters or proceedings in the bankruptcy case other than adversary proceedings in which the original attorney has not yet made an appearance. Failure to receive advance payment or guarantee of attorney's fees is not grounds for failure to comply with this subsection.

The requirements of this Local Rule are very clear. Substitution of counsel must be accomplished by a motion filed by the client, while an attorney seeking to withdraw must file a motion for leave to withdraw. *See id.* at (1)-(2). Unless and until the Court grants the relevant motion, the attorney of record remains counsel of record on the matter. *See id.* at

(4). Solvent's Agreement incorporates the requirements of Local Rule 9010-3(g) and specifically provides that the only way that Solvent may withdraw from the representation is with Court approval.

Paragraph 6 of the Solvent Agreement provides that "[o]nce the partial petition is filed, the Firm can withdraw from representation by obtaining permission from the Court to withdraw from the representation of Client." Paragraph 6 continues, requiring that "[u]ntil substitute counsel or Bankruptcy Court permission to withdraw is obtained, the Firm will continue to provide legal services to Client in connection with Client's bankruptcy case to the extent required by Local Bankruptcy Rule 9010-3(g)(4) . . . ." These same provisions are also incorporated into the Pre-Petition Disclosures as well as the Post-Petition Agreement. By incorporating the requirements of Local Rule 9010-3(g) directly into Solvent's bifurcation agreement documents, Solvent ensures compliance with the substitution and withdrawal requirements of the Rule.

**C.** **Has the Applicant Complied with Local Rule 1007-1 by Filing a Statement of Compensation that "Substantially Conforms" to Local Rule 1007-1?**

The answer to this question is simple: "yes". Solvent submitted its Statement of Compensation in this case utilizing Local Form 1007-1 and providing information in each of the required fields. *See* [ECF No. 7.] Paragraph 5a of the Statement of Compensation sets forth the specific legal services to be provided to the debtor, both pre- and post-petition, thus accurately reflecting the scope of services agreed to with the client. By submitting an accurate and comprehensive Rule 1007-1 Statement, Solvent has complied with the Local

Rule. To the extent the Court wishes Solvent to make any additional disclosures or modifications to the Statement, Solvent welcomes the Court's instruction.

**D.** **Is the Agreement "Reasonable" under 11 U.S.C. § 329.**

Section 329 of the Bankruptcy Code requires that a bankruptcy attorney submit a statement of compensation for his or fees and that the fees charged to a debtor must be reasonable. Under § 329(b), if the Court determines that the compensation paid to the attorney exceeds the reasonable value of the services provided, the Court may require disgorgement of the fees. The procedural mechanism for enforcement of 11 U.S.C. § 329 is Fed. R. Bankr. P. 2017, which "allows the court, after notice and a hearing, to determine whether payments made to an attorney either before or after the filing of a petition are excessive." *In re Allen*, 628 B.R. 641, 644–45 (B.A.P. 8th Cir. 2021).

Here, Solvent's Disclosure of Compensation [ECF No. 7] reflects that the total payment of the legal services rendered to debtor in this case are $2,238.00. These fees paid are $638 pre-petition, with the remaining $1,600 balance being paid post-petition. *See* [*id.*] In other cases, the U.S. Trustee appears to argue that an attorney's fees under a bifurcation agreement are unreasonable because there is a large differential between pre- and post-petition fees being paid. But that is not the appropriate test. Rather, courts construing the reasonableness of bifurcated fees have found that the reasonableness of the pre-petition fees and the post-petition fees must be analyzed on the basis of the services provided with respect to each flat fee, not compared to each other. *In re Carr*, 613 B.R. 427, 440 (Bankr. E.D. Ky. 2020).

In fact, the court in *In re Carr* rejected a similar argument by the Trustee in that case. In *Carr*, the Trustee argued that attorneys "must charge Debtor a comparable hourly rate for prepetition and post-petition work." *Id.* The court rejected that argument, stating: "This is incorrect. The Attorneys essentially agreed to perform prepetition services for one flat rate and post-petition services for a second flat rate. No party has argued that either flat rate was unreasonable." *Id.*; *see also In re Brown*, 631 B.R. at 94 (finding that "reasonableness is not gauged by a comparison between the prepetition charges and postpetition charges.") Thus, the argument advanced by the U.S. Trustee lacks merit. Instead, the Court should consider the services being provided by Solvent to the debtor, which are reasonable for the work performed.

Beyond that, the fees charged under the Solvent Agreement do not include any of the "red flag" fee issues that have been found in prior cases analyzing the issue and rejecting the fee applications in those cases. Courts around the country have rejected bifurcation agreements where the attorney charges an increased fee for bifurcation than they would typically charge under another fee arrangement. *See, e.g., In re Baldwin*, 2021 WL 4592265 at *15 (finding that $950 increase in his fees under the bifurcated fee agreement was unjustified); *In re Milner*, 612 B.R. 415, 441 (W.D. Okla. 2019) (deeming the fees charged unreasonable because the attorney charged more than his typical fees to represent the debtor on a bifurcation agreement).

Solvent does not charge additional fees under its bifurcation arrangements. [Bursell Declaration, ⁋ 3.] Rather, Solvent quotes the client an amount for the services to be provided and then walks the client through the payment options. [*Id.*] One of those options

is bifurcation. [*Id.*] Solvent also does not charge interest or late fees to its clients in bifurcation cases. [*Id.*] All of these facts reflect that when Solvent's clients choose bifurcation, they are being charged the same amount they would otherwise be charged under a different payment option.

Finally, Solvent's total fees in this case ($2,238 – inclusive of filing fee) are consistent with the fees charged for all of Solvent's cases. Solvent has analyzed the fees charged in Solvent's Chapter 7 cases in this District in 2021. [Bursell Decl., ⁋ 6.] Based on that analysis, it appears that the average fee for all Solvent's Chapter 7 cases (regardless of the method of payment arrangement) is $1,791. [*Id.*] As such, Solvent's fees are reasonable given the undersigned's substantial experience in bankruptcy matters. *See* [*id.* at ⁋ 1.] Given the foregoing, Solvent respectfully requests that the Court determine that the fees charged in this case are reasonable and consistent with the requirements of 11 U.S.C. § 329.

### E.  Does the Agreement Satisfy Applicable Requirements in 11 U.S.C. §§ 526-528?

Given that there are multiple provisions at issue in this question, each applicable section of the Code is addressed in turn below.

Section 526(a)(4) generally prohibits advising a debtor "to incur more debt in contemplation of such person filing a case under this title or to pay an attorney or bankruptcy petition prepare a fee or charge for services performed . . . ." Said another way, "[t]he statute contains two distinct prohibitions—one about incurring debt in anticipation of bankruptcy filings generally, and the other about incurring debt to pay for bankruptcy-related legal services more specifically." *Cadwell v. Kaufman*, 886 F.3d 1153, 1156 (11th

Cir. 2018). The purpose of the first prohibition is clear, attorneys or debt relief agencies should not advise a debtor to incur additional debt to manipulate the bankruptcy process. *See Milavetz, Gallop & Milavetz, P.A. v. U.S.*, 559 U.S. 229 (2010) (concluding that a debt relief agency violates the first prohibition if it advises a debtor to incur debt for an invalid purpose designed to manipulate the bankruptcy process). The second prohibition is intended to stop another type of misconduct, namely "a bankruptcy lawyer saying to his client, 'You should take on additional debt to pay me!'" *Cadwell*, 886 F.3d at 1159. This has been construed to prohibit a debtor from using a credit card to pay legal fees. *Id.* at 1155.

Here, Solvent did not advise the debtor to incur more debt in contemplation of filing for bankruptcy or induce her to incur additional debt to pay for Solvent's services. In fact, Solvent's Agreement specifically prohibits the use of credit cards for payments. As such, Solvent's Agreement and general practice comply with § 526(a)(4).

Section 527 of the Code requires that certain notices be provided to debtors before they are able to proceed with bankruptcy. Solvent provides a copy of those notices to each of its clients upon completion of the initial interview. Copies of the notices required by § 527(a)-(b), and § 342(b), are attached to the Declaration of Mr. Bursell as Exhibit A. As you will see, Solvent provides these notices to its clients and requires that they provide an electronic signature acknowledging receipt. [Bursell Decl., Ex. A.] As such, Solvent complied with the requirements of § 527.

Finally, § 528 of the Code requires that an attorney must enter into a written agreement with the debtor explaining the services to be performed and the charges to be

incurred. Solvent provides a copy of its retainer agreements to its clients during the initial

interview and explains in detail the services that Solvent will perform and the fees to be

charged for those services. In doing so, Solvent complies with the requirements of § 528.

[Bursell Decl., ¶ 4.]

**F.** **By Operation of Local Rules 1007-3-1 and 9010-3(g), is the Post-Petition Agreement Void for Lack of Consideration?**

It is axiomatic that a contract requires consideration. *See, e.g., Baehr v. Penn-O-Tex Oil Corp.*, 258 Minn. 533, 539, 104 N.W.2d 661, 665 (1960). However, it is also well

established that the exchange does not have to be of equivalent value. Rather, the exchange

must only involve "the voluntary assumption of an obligation by one party upon condition

of an act or forbearance by another." *Id.* Solvent does not dispute that pursuant to Local

Rules 1007-3-1 and 9010-3(g), as well as the express terms of its Agreements, it is required

to represent its debtor clients until the conclusion of the case or upon a court-authorized

withdrawal. However, Solvent's practice for those clients that sign the post-petition

agreement is to provide additional services that satisfy the consideration requirement under

Minnesota law.

By way of example, during its initial meeting with a prospective client, Solvent

explains that if the client chooses bifurcation and signs the post-petition engagement

agreement, Solvent will provide the client with credit repair counseling as well as a credit

report review to ensure all credit reports are correct. [Bursell Decl., ¶ 4.] Solvent recognizes

that this additional consideration is not identified in the Agreement, but even so, the

16

additional consideration provided by these services is sufficient to satisfy the requirements of Minnesota law.

To be clear, Solvent provides its clients the same full legal services contracted for in the pre-petition agreement irrespective of whether the client signs the post-petition agreement. Nonetheless, clients who do choose to sign the post-petition agreement receive the additional credit counseling and credit reports as a part of their continued work with Solvent. This additional consideration satisfies the consideration requirement for a valid contract under Minnesota law.[1] Additionally, Local Form 1007-3-1(7) and Local Form 1007-3-1(13) both obligate the attorney to provide legal services before a debtor pays their legal fee. It stands to reason that if there is consideration in a Chapter 13, then there must also be consideration in a Chapter 7.

**G.** **The Application Seeks an Order "Approving" the Agreement. What Other Forms of Relief, if Any, Should the Court Consider in Respect to the Application?**

While Solvent and the debtor have requested approval of the Agreement, they recognize that the Court is not limited in the relief it may issue. Solvent further recognizes that the Court may, upon analyzing the agreement and determining its reasonableness and compliance with applicable law, determine that changes need to be made for approval. Solvent respectfully requests that it be permitted to address any changes that the Court determine appropriate before the Court decides to reduce, disallow, or approve the fees.

---

[1] To the extent the Court determines that this additional consideration must be explicitly included in the text of the Post-Petition Agreement, Solvent requests the opportunity to make that minor amendment prior to the Court's decision on approval of its bifurcation Agreement.

**H. <u>Should the Court Review the Terms of the Agreement as Written, or Are There Evidentiary Issues in this Matter?</u>**

Solvent respectfully requests that the Court should consider the terms of the Agreement as written. The Agreements have been carefully drafted to ensure that the terms and obligations of both parties are clear. The Agreements consider and comply with the precedent that has considered bifurcated fee agreements. As such, the Agreements can be reviewed and approved on the papers alone. To the extent the Court deems testimony is necessary, Solvent will be happy to ensure that counsel and the debtor are available to participate.

**I. <u>Does the Agreement Comply with the Minnesota Rules of Professional Conduct?</u>**

The Agreements, as drafted, comply with the Minnesota Rules of Professional Conduct ("MRPC") for the following reasons:

*First*, Rule 1.2(c), MRPC, permits an attorney to limit the scope of representation so long as the client gives informed consent. Here, Solvent submits that the Agreements are not an "unbundled" or limited scope representation as discussed in Section A *supra*. Nonetheless, even if the Court deems the Agreement as providing unbundled legal services, such unbundling is permitted by the MRPC. To the extent the Court agrees that the Agreement does not provide unbundled legal services, Rule 1.2(c), MRPC, is not implicated in any way.

*Second*, the Agreement complies with Rule 1.5(a), MRPC, because the fees charged by Solvent are reasonable and consistent with the amounts charged within this District. *See* Section D *supra*.

*Third*, the Agreement complies with Rule 1.5(b)(1), MRPC, because it includes the required disclosures necessary to permit Solvent to charge a flat fee for its legal services. The Agreement includes each of the required disclosures set out in Rule 1.5(b)(1)(i)-(v), and as such, allows for the ethical use of a flat fee payment arrangement.

*Fourth*, the Agreement complies with Rule 1.8(e), MRPC, because Solvent does not finance the representation or provide any financial assistance to the client in connection with the representation.

*Fifth*, the Agreement complies with the requirements of Rule 1.16(d), MPRC, because under the Agreement, counsel is not permitted to withdraw without court approval. The requirement for court approval ensures that any potential withdrawal that may occur under the Agreement is done in a manner that does not prejudice the client.

In sum, the Agreement complies with each of the Minnesota Rules of Professional Conduct implicated by bifurcated fee agreements.

## <u>CONCLUSION</u>

For the foregoing reasons, Solvent and the debtor respectfully request that the Court approve the Agreements and permit the bifurcated fee arrangements that have been approved in the vast majority of Districts that have considered the issues presented here.

**SOLVENT PLLC**

Date:  February 10, 2022

By */s/Jeffrey J. Bursell*
Jeffrey J. Bursell (#0293362)
Attorney for Debtor
2223 5th Street
P.O. Box 10860
St. Paul, MN 55110
651.374.8883
jeff@solventlaw.com

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

Bky No.:  21-42321

In re:

Tara Lynn Siegle

      Debtor.

**DECLARATION OF JEFFREY
BURSELL
DEBTOR'S SUPPLEMENTAL
BRIEFING IN SUPPORT OF
APPLICATION TO APPROVE POST-
PETITION FEE AGREEMENT**

I, Jeffrey J. Bursell, state and declare as follows:

I am an attorney and the owner of Solvent PLLC, counsel for the Debtor in this matter. I submit this Declaration in support of Debtor's Supplemental Briefing in Support of Application to Approve Post-Petition Fee Agreement.

1.     I am an attorney licensed in the State of Minnesota and the District of Minnesota. I graduated from law school in 1999 and since that time, have worked in private practice representing debtors in bankruptcy matters. I have over 20.5 years of experience in representing debtors in Chapter 7 matters in this District. In addition to my work with clients, I am a member of the Minnesota Bar Association, Bankruptcy Section, NACBA, and the Bankruptcy Practice Committee.

2.     During my initial meetings with prospective clients in a Chapter 7 case, I specifically discuss the obligations and requirements that I will have as their counsel and that they will have as a debtor in bankruptcy. This includes providing them the notices required under § 527(a)-(b), and § 342(b). Copies of the notices for this matter are attached as Exhibit A to this Declaration.

3.      In addition to providing the client with the required notices, I provide the client with three potential payment options: (1) payment in full; (2) payment by a third party; or (3) a bifurcated fee agreement. During this meeting, I specifically walk the client through each fee agreement, discussing the differences in the various options. The amount to be charged for the legal services is based upon the complexity of the case; thus, each case is different. The overall fee is specific to the case. Moreover, the fee amount for pre-petition work and post-petition work is specific to the work expected for each part. Finally, the fee quoted is the same in each of the three options and does not vary based on which payment option the client chooses.

4.      If a client chooses to proceed with a bifurcated fee arrangement, I then walk the client through the bifurcated fee agreement in detail to ensure they understand the document. If a client chooses to hire Solvent to represent them, the client will execute a retainer agreement with the required bifurcation disclosures, a copy of which is provided to them at or near the time of signing. On the eve of filing, Solvent requires its clients to review and sign a bifurcation disclosure reiterating the bifurcation process, expectations, and process. In addition to the representation expressly described in Solvent's retainers, Solvent provides a credit repair class and credit report review as additional benefit to completing the bankruptcy through discharge.

5.      Upon receiving the required information from a client, Solvent begins the petition finishing process by importing creditors, reviewing the debtor's income and expenses to ensure the debtor qualifies for a chapter 7, reviews the assets, pulls a comprehensive background report (via Westlaw) to verify all assets are disclosed, and

performs a general review of the petition to ensure that the information contained in the petition is accurate at the time of filing. After filing the partial case, Solvent completes the petition, other required documents, and files the remaining documents with the Court.

6.      At the conclusion of 2021, I reviewed all of the Chapter 7 cases that Solvent PLLC filed in the District of Minnesota to compile an average fee charged for the legal representation in those cases. Based on my analysis, it appears that the average fee for legal representation in a Chapter 7 matter for Solvent PLLC in this District in 2021 was $1,791.

I declare under penalty of perjury that everything I have stated in this document is true and correct.


Dated:  February 10, 2022                    _/s/Jeffrey J. Bursell_____
                                             Jeffrey J. Bursell (#0293362)
                                             Attorney for Debtor
                                             2223 5th Street
                                             P.O. Box 10860
                                             St. Paul, MN 55110
                                             651.374.8883
                                             jeff@solventlaw.com

23

**EXHIBIT A**

## <u>Notice Required by 11 U.S.C. § 527(a) for Individuals Filing for Bankruptcy</u>

You are notified as follows:

1. All information that you are required to provide with your bankruptcy petition and thereafter in your case is required to be complete, accurate, and truthful.

2. All your assets and all of your liabilities are required to be completely and accurately disclosed in the documents filed to commence your case.

3. The value of each asset which is secured by a lien on such asset must be stated as the replacement value of such asset after reasonable inquiring to establish such value. The replacement value means the replacement value of the date of the filing of the bankruptcy petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value means the price a retail merchant would charge for the property of that kind considering the age and condition of the property at the time the value is determined.

4. After reasonable inquiry you are required to state your current monthly income.

5. After reasonable inquiry you are required to state the amounts set out in Section 707(b)(2) of the Bankruptcy Code.

6. In a case under Chapter 13, after reasonable inquiry, you are required to state your disposable income determined in accordance with 707(b)(2) of the Bankruptcy Code.

7. Information that you provide during your case may be audited pursuant to the provisions of the Bankruptcy Code. Your failure to provide information may result in dismissal of your case or other sanctions, including criminal sanctions.

**IMPORTANT NOTICE: In order to properly complete your bankruptcy petition in compliance with the Federal Bankruptcy Law, you must submit in writing to our office any changes or additions to the following criteria: changes in income, monthly expenses, or any other financial condition changes that may occur.  You must also submit in writing to our office any additional information concerning any omitted assets, additional assets, additional debt incurred, or any potential claims that you may have (i.e.: injury from auto accidents).  If this information is not provided in a timely manner to our office your petition schedules may lack the necessary content for you to receive the discharge of your debt and it is likely that you could incur further attorney fees pursuant to our attorney fee contract.**

Date:  11/23/2021

_____
Client

**Notice Required by 11 U.S.C. § 527(b) for Individuals Filing for Bankruptcy**

If you decide to seek bankruptcy relief, you can represent yourself, you can hire an attorney to represent you, or you can get help in some localities from a bankruptcy petition preparer who is not an attorney. **THE LAW REQUIRES AN ATTORNEY OR BANKRUPTCY PETITION PREPARER TO GIVE YOU A WRITTEN CONTRACT SPECIFYING WHAT THE ATTORNEY OR BANKRUPTCY PETITION PREPARER WILL DO FOR YOU AND HOW MUCH IT WILL COST.**

The following information helps you understand what must be done in a routine bankruptcy case to help evaluate how much service you need. Although bankruptcy can be complex, many cases are routine.

Before filing a bankruptcy case, either you or your attorney should analyze your eligibility for a different form of debt relief available under the Bankruptcy Code and which form of relief is most likely to be beneficial to you. Be sure you understand the relief you can obtain and its limitations. To file a bankruptcy case, documents called a Petition, Schedules, and Statement of Financial Affairs, as well as in some cases a Statement of Intention need to be prepared correctly and file with the bankruptcy court. You will have to pay a filing fee to the bankruptcy court. Once your case starts, you will have to attend the required first meeting of creditors where you may be questioned by a court official called a "trustee" and by creditors.

If you choose to file a Chapter 7 case, you may be asked by a creditor to reaffirm a debt. You may want help deciding whether to do so. A creditor is not permitted to coerce you into reaffirming your debts.

If you choose to file a Chapter 13 case in which you repay your creditors what you can afford over 3 to 5 years, you may also want help preparing your Chapter 13 plan and with the confirmation hearing on your plan which will be before a bankruptcy judge.

If you select another type of relief under the Bankruptcy Code other than 7 or 13, you will want to find out what should be done from someone familiar with that type of relief.

Your bankruptcy case may also involve litigation. You are generally permitted to represent yourself in bankruptcy court, but only attorneys, not bankruptcy petition preparers, can give you legal advice.

Date: 11/23/2021

_____
Client

## Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy

1. **A Brief Description of the Types of Bankruptcy:**

   a.  Chapter 7 – Filing fee $338 plus attorney fees

   Chapter 7 is designed for debtors in financial difficulty who do not have the ability to pay their existing debts. Under chapter 7 a trustee takes possession of all your property. You may claim certain of your property as exempt under governing law. The trustee then liquidates the property and uses the proceeds to pay your creditors according to priorities of the Bankruptcy Code. The purpose of filing a chapter 7 case is to obtain a discharge of your existing debts. If, however, you are found to have committed certain kinds of improper conduct described in the Bankruptcy Code, your discharge may be denied by the court, and the purpose for which you filed the bankruptcy petition will be defeated.

   Even if you receive a discharge, there are some debts that are not discharged under the law. Therefore, you may still be responsible for such debts as certain taxes and student loans, alimony and support payments, criminal restitution, and debts for death or personal injury caused by driving while intoxicated from alcohol or drugs. Under certain circumstances you may keep property that you have purchased subject to valid security interest. Your attorney can explain the options that are available to you

   b.  Chapter 13 – Filing fee $313 plus attorney fees

   Chapter 13 is designed for individuals with regular income who are temporarily unable to pay their debts but would like to pay them in installments over a period of time. You are only eligible for chapter 13 if your debts do not exceed certain dollar amounts set forth in the Bankruptcy Code. Under chapter 13 you must file a plan with the court to repay your creditors all or part of the money that you owe them, using your future earnings. Usually, the period allowed by the court to repay your debts is three years, but no more than five years. Your plan must be approved by the court before it can take effect. Under chapter 13, unlike chapter 7, you may keep all your property, both exempt and non-exempt, as long as you continue to make payments under the plan. After completion of payments under your plan, your debts are discharged except alimony and support payments, student loans, certain debts including criminal fines and restitution and debts for death or personal injury caused by driving while intoxicated from alcohol or drugs and long term secured obligations.

   c.  Chapter 11 - $1,738 plus attorney fees

   Chapter 11 is designed for the reorganization of a business but is also available to consumer debtors. Its provisions are quite complicated, and any decision by an individual to file a chapter 11 petition should be reviewed with an attorney.

   d.  Chapter 12 – Filing fee $278 plus attorney fees

   Chapter 12 designed to permit family farmers to repay their debts over a period of time from future earnings and is in many ways similar to chapter 13. The eligibility requirements are restrictive, limiting its use to those whose income arises primarily from a family - owned farm.

2. **Services Available from Credit Counseling Agencies**

   The law generally requires that you receive a credit counseling briefing from an approved credit counseling agency. 11 U.S.C. § 109(h).  If you are filing a joint case, both spouses must receive the briefing. With limited exceptions, you must receive it within the 180 days before you file your bankruptcy petition. This briefing is usually conducted by telephone or on the Internet.

In addition, after filing a bankruptcy case, you generally must complete a financial management instructional course before you can receive a discharge. If you are filing a joint case, both spouses must complete the course.  You can obtain the list of agencies approved to provide both the briefing and the instructional course from:

http://www.uscourts.gov/servicesforms/bankruptcy/credit-counseling-and-debtoreducation-courses

If you do not have access to a computer, the clerk of the bankruptcy court may be able to help you obtain the list.

**3.   Determination of Disposable Income Pursuant to 707(b)(2)**

Before your case can be filed, it is subject to what is called "Means Testing". The Means Test was designed to determine whether or not you qualify to file a case under chapter 7 of the Bankruptcy Code, and if not, how much you need to pay your unsecured creditors in a chapter 13 case. For purposes of means test, you must state, after reasonable inquiry, your total current monthly income, the amount of all expenses as specified and allowed pursuant to section 707(b)(2) of the Bankruptcy Code, and if the plan is to file you in a Chapter 13 case, you must state, again after reasonable inquiry, your disposable income, as that term is defined.

**4.   Your Duty to Provide Accurate and Complete Disclosure**

Some or all of the information you provide in connection with your bankruptcy will be filed with the bankruptcy court on forms or documents that you will be required to sign and declare as true under penalty of perjury. All information that you are required to provide with the filing of your case and thereafter, while your case is pending, must be complete, accurate and truthful. All your assets and all your liabilities must be completely and accurately disclosed in the documents filed to commence your case.

Some places in the bankruptcy code require you to determine and list the replacement value of an asset such as a car, or furniture. When replacement value is required, it means the replacement value, established after reasonable inquiry, as of the date of the filing of your bankruptcy case, without deduction for costs of sale or marketing. With respect to property acquired for personal, family or household purposes, replacement value means the price a retail merchant would charge for "used" property of that kind considering the age and condition of the property.

Information that you provide during your case may be audited pursuant to the provisions of the Bankruptcy Code. Your failure to provide complete, accurate and truthful information may result in the dismissal of your case or other sanctions, including criminal sanctions.  A person who knowingly and fraudulently conceals assets or makes a false oath or statement under penalty of perjury in connection with a bankruptcy case shall be subject to fine, imprisonment, or both.

All information you provide in connection with your bankruptcy case is subject to examination by the Attorney General.

Date: 11/23/2021

_____
Sign Name