UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                                                          Bankr. No. 21-42321 KLT

Tara Lynn Siegle,

    Debtor.                                                                                Chapter 7

MEMORANDUM DECISION AND ORDER

This matter came before the Court on an application to approve a post-petition fee agreement (the "Application") [ECF No. 10] filed by Jeffrey J. Bursell of Solvent PLLC ("Applicant"), as counsel for Tara Lynn Siegle, the debtor in this case ("Debtor"). The Court held an initial hearing on the Application and requested supplemental briefing. [ECF No. 24.] Applicant submitted a supportive brief [ECF No. 25], the U.S. Trustee responded [ECF No. 27][1], and Applicant replied [ECF No. 28]. Applicant also submitted a "Letter to the Court" regarding these issues. [ECF No. 31.] On May 11, 2022, the Court held a final hearing. Appearances were as noted on the record. At the conclusion of the hearing, the Court took this matter under advisement. It is now ready for resolution.

This is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334. This memorandum decision is based on all the information available to the Court and constitutes the Court's

---

[1] The U.S. Trustee briefed the reasonableness of the proposed fee arrangement under § 329, but declined to take a position with respect to §§ 526–528.

findings of fact and conclusions of law under Fed. R. Bankr. P. 7052, made applicable to this contested matter by Fed. R. Bankr. P. 9014(c).

The Application requests approval of a "bifurcated" fee arrangement. The Court reviewed the Application pursuant to the Amended En Banc Order dated December 13, 2021[2] (the "En Banc Order"), which applies in all chapter 7 cases filed in the District of Minnesota on or after December 15, 2021. For the reasons stated herein, the Application is **DISAPPROVED.** Applicant has failed to comply with material requirements imposed on attorney-client relationships and fee agreements by 11 U.S.C. §§ 526(a)(2)–(3) and 528(a)(1). Pursuant to 11 U.S.C. § 526(c)(1), the fee agreements described in the Application are **VOID** and may not be enforced against Debtor.

## BACKGROUND

In a typical consumer chapter 7 fee arrangement, the debtor enters into a single agreement with counsel and pays all legal fees in full prior to the petition date. Lamie v. United States Trustee, 540 U.S. 526, 537 (2004). The scope of services in a chapter 7 bankruptcy case generally commences with pre-petition consultation and continues throughout the "main case" until the debtor obtains a discharge, exclusive of adversary proceedings. It has long been the policy in the District of Minnesota that the scope of services can be truncated only by valid substitution of counsel or entry of a final order granting a motion to withdraw. Local Rule 9010-3(g)(4); In re Bulen, 375

---

[2] Post-Pet. Attorney's Fee Arrangements in Ch. 7 Cases, In re Administrative Orders and Amendments to Local Rules and Forms, No. 21-00401 (Bankr. D. Minn. Dec. 13, 2021) (en banc), ECF No. 6, available at https://www.mnb.uscourts.gov/en-banc-standing-orders.

2

B.R. 858 (Bankr. D. Minn. 2007); In re Huynh, 368 B.R. 838, 845 (Bankr. D. Minn. 2007); In re Johnson, 291 B.R. 462 (Bankr. D. Minn. 2003). Applicant acknowledges this requirement. [ECF No. 25, at 5–6.]

In this case, Applicant and Debtor executed two fee agreements: a pre-petition fee agreement (the "Pre-Petition Agreement") [ECF No. 10, Exs. 1–2] and a post-petition fee agreement (the "Post-Petition Agreement") [ECF No. 10, Ex. 3] (collectively, the "Agreements"). The scope of services under the Pre-Petition Agreement ended with the filing of the petition, which Applicant refers to as a "partial petition." [Prepetition Agreement, at 1, ¶ 2.] Under the Pre-Petition Agreement, Debtor was advised she had the following three options at this juncture: (1) complete the case pro se; (2) hire another bankruptcy attorney; or (3) execute the Post-Petition Agreement. Debtor executed the Post-Petition Agreement on the petition date, pursuant to which counsel continued to represent her in this case. Together, the Agreements thus "bifurcate" Debtor's bankruptcy representation into two phases.

Applicant argues this fee arrangement is beneficial to Debtor because it enables payment of her legal fees over time. Section 330(a)(4)(B) allows chapter 12 or 13 debtors to pay their legal fees over time, but there is no comparable section of the Code for chapter 7 debtors. Without a bifurcated fee arrangement, unpaid pre-petition legal fees in a chapter 7 case are uncollectable from debtors unless they opt to reaffirm or voluntarily repay them under § 524(c) or (f), respectively. Proponents view bifurcation as a solution to this perceived "defect" in the Code. However, "if Congress wishes to amend the Bankruptcy Code to include an exception for pre-petition attorney fees it may, but it is outside the domain of this Court to do so." In

3

re Chandlier, 292 B.R. 583, 587 (Bankr. W.D. Mich. 2003), aff'd, Rittenhouse v. Eisen, 404 F.3d 395 (6th Cir.), cert. denied 546 U.S. 872 (2005); accord Lamie v. U.S. Trustee, 540 U.S. 526, 542 (2004).

## DISCUSSION

### I. The description of Applicant's services in the Agreements fails to comply with 11 U.S.C. §§ 526(a)(2)–(3) and 528(a).

The Code expressly regulates attorney-client relationships and fee agreements in bankruptcy cases. Section 528(a)(1) requires a "debt relief agency," including bankruptcy attorneys, to execute a written contract with an "assisted person," i.e., a consumer debtor, within 5 business days, "that explains clearly and conspicuously – (A) the services such [attorney] will provide to such assisted person. . . ." 11 U.S.C. § 528(a)(1)(A). Section 526 reinforces this obligation, prohibiting a bankruptcy attorney from making "untrue or misleading" statements to a consumer debtor. 11 U.S.C. § 526(a)(2). The Code further prohibits a bankruptcy attorney from "misrepresent[ing]" what services it will provide to a consumer debtor, whether "directly or indirectly, affirmatively or by material omission." 11 U.S.C. § 526(a)(3)(A). The Court has both authority and an independent obligation to review fee agreements for compliance with the Code. 11 U.S.C. §§ 329, 526(c); Fed. Rs. Bankr. P. 2016(b), 2017; In re Zapecki, 277 F.3d 1041, 1045 (8th Cir. 2002); In re Mahendra, 131 F.3d 750, 758 (8th Cir. 1997); In re Egwim, 291 B.R. 559, 563 n.2 (Bankr. N.D. Ga. 2003).

Some parts of the Agreements at issue here do accurately describe the scope of services due from an attorney to a consumer debtor in the District of Minnesota. For

4

example, Applicant certified Local Form 1007-3-1(7) (the "Notice of Responsibilities") on December 16, 2021 [ECF No. 4], which accurately describes the legal services that comprise "main case" representation. The Notice of Responsibilities is attached as Exhibit A to, and incorporated by reference in, both of the Agreements. [ECF No. 10.] Similarly, Applicant included excerpts from Local Rule 9010-3(g)(4) in both of the Agreements:

> (4) [ . . . ] Until a substitution of attorneys is filed or an order is entered allowing the original attorney to withdraw, the original attorney is the client's attorney of record and the original attorney shall represent the attorney's client in bringing and defending all matters or proceedings in the bankruptcy case other than adversary proceedings in which the original attorney has not yet made an appearance. Failure to receive advance payment or guarantee of attorney's fees is not grounds for failure to comply with this subsection.

However, the Agreements also contain several untrue and misleading statements about legal services in bankruptcy cases. For example, to "bifurcate" the scope of services in this case, Applicant informed Debtor his services would "naturally terminate immediately after filing of the partial petition." [Pre-Petition Agreement, Section 4 of Exhibit B.] He also advised Debtor that, if she did not execute the Post-Petition Agreement after filing the partial petition, she would need to hire a different lawyer or proceed pro se. [Pre-Petition Agreement, Section 5 of Exhibit B.] If she failed to do so, Applicant warned Debtor she would be "solely responsible" for completing her own bankruptcy filing. [Pre-Petition Agreement, Sections 1 and 9 of Exhibit B.] These representations are particularly important because partial filings in the District of Minnesota automatically trigger entry of an order advising a debtor

5

that failure to complete the filing within 14 days will result in dismissal of the case. [ECF No. 5.]

These statements violate §§ 526(a)(2)–(3) because they are untrue and misleading and they affirmatively misrepresent well-settled law about withdrawal and the scope of services in bankruptcy cases. The assertion that an attorney can "reserve[] the right to withdraw" [Pre-Petition Agreement, ¶ 6] for nonpayment, or that they can condition the provision of legal services in the main case upon the debtor signing an additional fee agreement, has been considered and unequivocally rejected in the District of Minnesota. In re Bulen, 375 B.R. 858, 865 (Bankr. D. Minn. 2007) ("A provision in a retainer purporting to give the attorney the right of withdrawal and nonappearance is at best misleading, intimidating, and it works to prevent a debtor's objection to a motion to withdraw or to a failure to appear.").

The Agreements also violate § 526(a)(3) because they misrepresent the services due to Debtor by material omission. Merely reciting an excerpt of the responsibilities included in Local Rule 9010-3(g), or a cursory statement that court permission must precede withdrawal, is not exculpatory. Critically, the Agreements omit any explanation that counsel would not be permitted to withdraw from representation after filing a partial petition, absent truly extraordinary circumstances. See In re Cuddy, 322 B.R. 12 (Bankr. D. Mass. 2005); In re Egwim, 291 B.R. 559, 579 (Bankr. N.D. Ga. 2003); In re Albert, 277 B.R. 38, 46 (Bankr. S.D.N.Y. 2002). In the bankruptcy context, it "is well recognized that 'once counsel appears in a bankruptcy case for a debtor, withdrawal is not generally allowed unless replacement counsel is

6

available, even if the reasons for withdrawal appear justified under the rules.'"[3] In re Brooks, 2000 WL 35723252, at *2 (Bankr. D. Vt. Dec. 23, 2000) (quoting In re Glenn, 1992 WL 174696, at *1 (Bankr. E.D. Pa. July 15, 1992)). The Agreements as written obscure the reality that execution of the Post-Petition Agreement was not necessary to ensure the provision of legal services in Debtor's main case after filing the partial petition. In fact, the real purpose of the Post-Petition Agreement is to ensure the collectability of Applicant's unpaid legal fees.

The presence of both accurate and inaccurate statements in a fee agreement also implicates the requirements set forth in § 528(a)(1), which requires that the explanation of services be stated "clearly and conspicuously"; the Agreements cannot be sufficiently "clear" if they make inconsistent statements about what Applicant will or will not do for Debtor in her case. As described above, Applicant states that he will continue to provide all fundamental bankruptcy services unless and until the Court authorizes Applicant's withdrawal, but at the same time, Applicant asserts that his "limited-scope" Pre-Petition Agreement engagement will terminate automatically

---

[3] The limitations on withdrawal in the bankruptcy context flow naturally from the timelines involved in a typical chapter 7 bankruptcy case and the extreme prejudice withdrawal would have on a debtor, other parties, and the administration of justice, as well as the delay in resolution of the case. See COKeM Int'l, Ltd. v. MSI Enter. LLC, 2020 WL 12880065, at *1 (slip op.) (D. Minn. Oct. 19, 2020) (discussing the factors considered for withdrawal); accord Sanford v. Maid-Rite Corp., 816 F.3d 546, 550 (8th Cir. 2016). Among other quick deadlines, schedules must be completed within 14 days after the petition is filed, 11 U.S.C. § 707(a), Fed. R. Bankr. P. 1007(c), the first § 341 meeting of creditors is held 21–40 days after the petition date, Fed. R. Bankr. P. 2003(a), and any motion to dismiss or convert based on a presumption of abuse or objecting to discharge typically must be filed within 60 days of the first § 341 meeting, 11 U.S.C. § 704(b), Fed. Rs. Bankr. P. 1017(e), 4004(a). Accordingly, most of the fundamental bankruptcy services must be completed within the first 100 days of a bankruptcy case, with the most critical of these occurring within the first weeks.

upon the filing of the petition. These contradictory statements are often made in quick succession or even within a single section. For example:

> While the Attorney shall remain the attorney of record to the extent required by Local Bankruptcy Rule 9013-3(g)(4), this Limited Pre-Petition Engagement is limited to services performed prior to and including the date of the bankruptcy filing.

[Pre-Petition Agreement, Section 2 of Exhibit B, Excluded Services.] Similarly, Exhibit A to the Pre-Petition Agreement informed Debtor that her counsel would "[t]imely prepare and file the debtor's petition, schedules, statements, certificates, and other documents required to commence a case, and review them for accuracy contemporaneously with the filing." [Exhibit A to the Pre-Petition Agreement; ECF No. 4 at Section I(G) of the Notice of Responsibilities;.] However, in Exhibit B to the Pre-Petition Agreement, Applicant also counseled Debtor that she would be "solely responsible" for filing the schedules if she did not execute the Post-Petition Agreement and pay him additional fees thereunder. [Pre-Petition Agreement, Sections 1, 2, and 9 of Exhibit B.]

The problem is compounded by the fact that the Agreements are lengthy, single-spaced documents. Therefore, the Court also cannot conclude that the scopes of services under the Agreements are "conspicuous," in compliance with § 528(a)(1)(A).

## II.     The Agreements are void pursuant to 11 U.S.C. § 526(c)(1).

The Code is unambiguous about the remedy for failure to comply with its requirements for attorney-client relationships and fee agreements:

> (c)(1) Any contract for bankruptcy assistance between a debt relief agency and an assisted person that does not comply with

8

> the material requirements of [section 526], section 527, or section 528 shall be void and may not be enforced by any Federal or State court or by any other person, other than such assisted person.

11 U.S.C. § 526(c)(1). When setting forth the essential elements of a written fee agreement, only two terms are expressly enumerated by the Code: the scope of services and the amount and payment terms of fees. 11 U.S.C. § 528(a)(1). Since the Agreements make statements that are untrue and misleading and that constitute misrepresentations about Applicant's services, they violate material provisions of § 526(a)(2)–(3) and § 528(a)(1)(A). In accordance with § 526(c)(1), the Agreements are therefore statutorily void and unenforceable by anyone except Debtor.

## CONCLUSION

Upon filing a petition, counsel agrees to represent the debtor and provide all reasonably necessary bankruptcy services throughout the case, until and unless permitted to withdraw through substitution or court approval, and authorization to withdraw is neither automatic nor presumed. An agreement that purports to withhold such services, or to condition such services upon execution of an additional fee agreement, is fundamentally untrue and misleading, in violation of § 526(a)(2) and (3). Further, the presence of both true and untrue statements in a fee agreement does not comply with the requirement to "clearly and conspicuously" explain the services that will be provided, in violation of § 528(a)(1). These material defects render the Agreements statutorily void under § 526(c)(1).

9

Accordingly, IT IS ORDERED:

1. The Application is **DISAPPROVED.**

2. The Agreements are **VOID** and may not be enforced against Debtor.

DATED: May 19, 2022

_____
Kesha L. Tanabe
United States Bankruptcy Judge

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *05/19/2022*
Tricia Pepin, Clerk, by AB